UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
-------------------------------------------------------------

| | |
|---|---|
| **BETSY BATES** | |
| **Plaintiff,** | CIV. NO.: _____ |
| v. | ECF CASE |
| **DELMAR GARDENS NORTH, INC.** and **DELMAR GARDENS NORTH OPERATING LLC** | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

-------------------------------------------------------------

Plaintiff, BETSY BATES, by and through her undersigned counsel, KENNETH A. LEEDS, PC and EISENBERG & BAUM, LLP, as and for her Complaint against Defendants, DELMAR GARDENS NORTH, INC. and DELMAR GARDENS NORTH OPERATING LLC, hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, Betsy Bates, is an individual who is profoundly deaf and communicates primarily in American Sign Language ("ASL") which is her expressed, preferred, and most effective means of communication. Defendants own and operate a skilled nursing facility called Delmar Gardens in St. Louis County, Missouri, as well as a residential retirement community called Garden Villas. Ms. Bates is a resident of Garden Villas and was a patient at Delmar Gardens, where she was denied reasonable accommodations for her disability despite repeated requests to

1

facilitate effective communication between herself and Defendants' employees and staff.

2. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and no substitute for direct communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said. Despite this, Defendants' physicians and staff often relied on this ineffective means of communication instead of properly accommodating Ms. Bates' disability.

3. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' residences and health care services. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. and its implementing regulation, 28 C.F.R. Part 36; the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 et seq.; the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et. seq.; and other state and common law causes of action.

## THE PARTIES

4. Plaintiff BETSY BATES brings this action and is an individual residing at 555 Bluff Parks Drive, Florissant, Missouri 63031. Plaintiff is deaf, primarily communicates in American Sign Language, and is substantially limited in the major life activities of hearing and speaking within the meaning of federal, state, and local anti-discrimination laws.

5. Defendant, DELMAR GARDENS NORTH, INC., upon information and belief, at all times hereinafter mentioned, has been licensed and doing business in the State of Missouri with a principal place of business at 14805 North Outer 40 Road, Suite 300, Chesterfield, Missouri 630176-6060.

6. Defendant, DELMAR GADENS NORTH OPERATING, LLC, upon information and belief, at all times hereinafter mentioned, has been licensed and doing business in the State of Missouri with a principal place of business at 120 South Central, St. Louis, Missouri 63105.

7. Defendants jointly and/or severally own and operate Delmar Gardens, a skilled nursing facility, with a principal address at 4505 Parker Rd, Florissant, Missouri 63033. Delmar Gardens is a place of public accommodation under federal, state and local antidiscrimination laws and is a recipient of federal financial assistance. Defendants also jointly and/or severally own and operate Garden Villas. Thus, Defendants are subject to the requirements of the ADA, Section 504 of the Rehabilitation Act, the MHRA, and the FHA.

8. Plaintiff lives in a Garden Villas residence, which is, upon information and belief, approximately six (6) miles from Delmar Gardens.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law, and supplemental jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the claims occurred in, and the parties all reside within the jurisdiction of, the United States District Court for the Eastern District of Missouri.

## CONDITION PRECEDENT

11. Pursuant to the requirements of the MHRA, Mo. Rev. Stat § 213.11, et seq., Plaintiff filed timely Charges of Discrimination with the Missouri Commission on Human Rights ("MCHR") on November 11, 2013.

12. The MCHR issued notice of Right to Sue on May 6, 2015.

13. Pursuant to the requirements of the MHRA, Mo. Rev. Stat § 213.11, et seq., this Petition is timely in that it was filed within ninety (90) days of the issuance of the notice of the Right to Sue and within two (2) years of the discriminatory actions which form the basis of Plaintiff's claims.

14. Therefore, Plaintiff has satisfied all conditions precedent to the filing of her Complaint.

## STATEMENT OF FACTS

15. Betsy Bates is deaf and primarily communicates in American Sign Language.

16. Ms. Bates cannot read lips, and requires an ASL interpreter to communicate effectively in medical settings.

17. Ms. Bates lives at 555 Bluff Parks Drive, which is a residence within the Garden Villas community.

18. Ms. Bates underwent hip surgery on May 14, 2013 at Depaul Health Center in Bridgeton, Missouri, and stayed for recovery until May 18, 2013.

19. Beginning Saturday, May 18, 2013, Ms. Bates was transported via ambulance to Delmar Gardens North Rehabilitation Center at 4401 Parker Road, Florissant, Missouri for further recovery, rehabilitation and physical therapy.

20. On or about May 18, 2013, Ms. Bates made her first written request for closed captioning on the TV in her room, and for an ASL interpreter.

21. The nurse manager declined this request, writing: "Unfortunately we don't have an interpreter. We were told you would be able to communicate well without one."

22. Defendant's staff insisted on communicating with Ms. Bates through gestures and written notes.

23. Thereafter, Ms. Bates again wrote: "I would like to talk to Nurse Manager. I need an interpreter so bad."

24. Another nurse wrote in response: "I will call our speech therapist, so we can work on better communication for you. I will also make sure you have plenty of paper."

25. Ms. Bates was finally discharged on May 31, 2013 without ever having been provided an interpreter or any other form of auxiliary aid or service to allow her to fully end effectively communicate.

26. Defendants did not, at any point, provide Plaintiff with adequate auxiliary aids and services to enable her to effectively communicate with Defendant's staff, despite Plaintiff's request for an onsite ASL interpreter.

27. Plaintiff was unable to fully understand the care being provided, the services she received, or the medication she was given.

28. Upon information and belief, Defendants refuse to hire qualified on-site sign language interpreters as a matter of policy.

29. Defendants, as health care providers, knew or should have known of their obligations under the MHRA, ADA, and Section 504 to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing.

30. Defendants, as health care providers, knew or should have known that they had an obligation to individuals who are deaf or hard of hearing under the MHRA, ADA, and Section 504 to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including but not limited to the provision of an ASL interpreter to ensure effective communication.

31. Defendants and their physicians and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person.

32. As a result of the actions and/or inactions of Defendants and their physicians and/or staff, Plaintiff was denied information that is readily and routinely provided to hearing persons, including but not limited to information regarding:

the reasons for her admissions and treatment given; the purposes of the treatments being provided; the common risks, and/or benefits of treatments given; the common risks, side effects and benefits of the medication given, as well as the specific dosage range for the medications given; alternative available treatments; the approximate length of her care; the potential side effects of stopping treatment; and/or aftercare instructions, including information regarding any need to continue treatments or arrangements needed to be made for follow up care.

33. As a result of the actions and/or inactions of Defendants and their physicians and/or staff, Plaintiff was denied the same opportunities that are readily and routinely provided to hearing persons to make decisions regarding treatments and/or to give consent to such treatments.

34. It is reasonably foreseeable that Plaintiff will continue to visit Defendants' facilities in the future, as they are close to her home and she is an elderly woman who needs healthcare services on a regular basis.

35. Based on Plaintiff's observations of Defendants' conduct, the refusal to offer onsite sign language interpreting services is the result of a policy and/or practice of Defendant to discourage the use of onsite interpreters without regard to whether other methods will provide effective communication.

36. Based on Defendants' previous denial of effective communication for Plaintiff, it is reasonably foreseeable that Defendant will fail to accommodate Plaintiff or other deaf individuals in the future, as Defendants' conduct is part of a discriminatory and deliberately indifferent policy, pattern, and/or practice.

37. Plaintiff is aware of discriminatory barriers to access at Delmar Gardens and is thereby deterred from accessing its healthcare services because of the discrimination she has faced and expects to face in the future.

38. Defendants' failure to provide on-site qualified sign language interpreters made Plaintiff's treatment more difficult because it prevented effective communication between her and Defendants' staff.

39. Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to her communication needs, causing her to endure humiliation, shame, fear, anxiety, and emotional distress.

### COUNT I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

40. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

41. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to Defendants' conduct.

42. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendants' conduct.

43. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

44. Defendants own, lease, and/or operate places of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(F).

45. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services,

8

facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

46. Title III of the ADA further defines discrimination to include denying participation or offering unequal or separate benefit to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A).

47. Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

48. Title III of the ADA further provides that "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

49. Defendants discriminated against Plaintiff on the basis of her disability, as hereinbefore alleged, in violation of the above-cited provisions of the ADA.

50. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff or additional deaf individuals or family members.

51. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## COUNT II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

52. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

53. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendants' conduct.

54. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendants' conduct.

55. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

56. At all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements, and were engaged in the business of providing health care. Therefore, Defendants' medical services are a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

57. Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

58. Defendants discriminated against Plaintiff, solely on the basis of her disability, by denying her meaningful access to the services, programs, and benefits the

Defendants offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

59. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff or other dead individuals or family members.

60. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

61. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 29 U.S.C. § 794(a) and/or common law.

**COUNT III: VIOLATIONS OF THE MISSOURI HUMAN RIGHTS ACT**

62. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

63. At all times relevant to this action, the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 et seq., has been in full force and effect and has applied to Defendants' conduct.

64. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activity of hearing and speaking and has been a qualified individual with a disability within the meaning of the MHRA, Mo. Rev. Stat. § 213.010(4).

65. At all times relevant to this action, Defendants' facilities have been places of public accommodation within the meaning of the MHRA, Mo. Rev. Stat. § 213.010(15).

66. The MHRA, Mo. Rev. Stat. § 213.065(2), states that "[i]t is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation . . . or to segregate or discriminate against any such person in the use thereof on the grounds of . . . disability."

67. Defendants discriminated against Plaintiff on the basis of her disability by denying access to full and equal enjoyment of the accommodations, advantages, facilities, services, or privileges made available in its place of public accommodation, and by discriminating against Plaintiff in her use thereof, on the grounds of disability, in violation of the MHRA.

68. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff or additional deaf individuals or family members.

69. Plaintiff is therefore entitled to seek and recover injunctive relief, compensatory damages, attorney's fees and costs, and punitive damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to Mo. Rev. Stat. § 213.111(2).

### COUNT IV: VIOLATIONS OF THE FAIR HOUSING ACT

70. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

71. This action is for injunctive relief, damages and punitive damages under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et. seq.

72. Defendants, as housing providers, are required to comply with the mandates under 42 U.S.C. § 3604 of the FHA.

73. Plaintiff is (i) a deaf or hard of hearing person whose disability substantially limits her major life activities, including hearing, speaking, and her ability to effectively communicate with others who do not know sign language, and (ii) a resident within Garden Villas, and is therefore a qualified person within the meaning of 42 U.S.C. § 3601, et. seq.

74. Plaintiff owns or rents a home that is a dwelling as defined in 42 U.S.C. § 3602 and subject to the provisions of § 3604 of the FHA.

75. Defendants' medical services are services connected to each home and are subject to 42 U.S.C. § 3604 of the FHA.

76. The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f).

77. Defendants discriminated against Plaintiff as hereinbefore alleged, in violation of the above-cited provisions of the FHA.

78. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or other deaf residents.

79. Plaintiff is therefore entitled to seek and recover compensatory and punitive damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to the FHA.

80. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to the FHA and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

81. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Missouri Human Rights Act, and the Fair Housing Act;

82. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

83. Order Defendants:

    a. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiffs or other deaf or hard of hearing individuals by failing to provide effective communication;

    b. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an on-site interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

    c. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication

    services to ensure effective communication with deaf or hard of hearing persons;

d. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Hospital utilizes a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

e. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

f. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

g. to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, the MHRA, and the FHA;

h. to train all its employees, staff, and other agents on a regular basis about Defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical

assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing patients;

84. Award to Plaintiff:

   a. Compensatory damages pursuant to Section 504 of the Rehabilitation Act, the Missouri Human Rights Act, and the Fair Housing Act;

   b. Punitive damages pursuant to the MHRA and the FHA;

   c. Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, the MHRA, and the FHA;

   d. Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: May 17, 2015

        KENNETH A. LEEDS, PC

        /s/ Kenneth A. Leeds
        Kenneth A. Leeds #30885MO
        906 Olive Street, Suite 1006
        St. Louis, MO 63101
        314-726-5555 (O)
        314-725-3012 (F)
        kleeds41@aol.com

EISENBURG & BAUM, L.L.P

/s/_ Kenneth A. Leeds (With Permission)_____

Eric Baum, Esq.
Bar # NY-2591618
(Motion for Pro Hac Vice to be filed)
Andrew Rozynski, Esq.
Bar # NY-5054465
(Motion for Pro Hac Vice to be filed)
24 Union Square East
Fourth Floor
New York, NY 10003

*Attorneys for Plaintiffs*