UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BETSY BATES, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DELMAR GARDENS NORTH, INC., et al., | ) Case No. 4:15-cv-00783-AGF |
| | ) |
|     Defendants. | ) |

# MEMORANDUM AND ORDER

This action, brought under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*; section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, *et seq.*; and the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, is before the Court on Defendants' motion to compel Plaintiff to produce certain medical information and records. For the reasons set forth below, the motion shall be granted in part and denied in part.

# BACKGROUND

Plaintiff, who is profoundly deaf, alleges that Defendants failed to provide her with effective accommodations for her disability when she received care at Defendants' facility in May 2013. Plaintiff alleges that she underwent hip surgery on May 14, 2013 at Depaul Health Center and stayed there for recovery until May 18, 2013. Plaintiff alleges

that, on May 18, 2013, she was transported to Delmar Gardens North Rehabilitation Center, a nursing facility owned and operated by Defendants, for further recovery, rehabilitation, and physical therapy. According to Plaintiff, she is deaf, primarily communicates in American Sign Language, cannot read lips, and requires a sign language interpreter to communicate effectively in medical settings. Plaintiff alleges that she was denied an on-site sign language interpreter despite her repeated requests, which resulted in her not being able to communicate effectively with Defendants' staff and deterred her from using Defendants' services in the future. Plaintiff alleges that she was discharged on May 31, 2013, from Defendants' facility without ever having been provided with an interpreter or any other form of auxiliary aid or service that would allow her to fully and effectively communicate. Plaintiff seeks, among other relief, compensatory damages for the emotional distress caused by Defendants' alleged failure to accommodate her disability and an injunction requiring Defendants to implement and comply with certain policies to adequately accommodate Plaintiff and other deaf persons in the future.

On or about September 8, 2015, Defendants served Plaintiff with a First Set of Interrogatories and a First Request for the Production of Documents. On or about November 18, 2015, Plaintiff responded to the interrogatories and the request for production, but, according to Defendants, failed to provide full and complete answers. Specifically, according to Defendants, Plaintiff failed to fully respond to Interrogatory No. 8, Document Request No. 7, and Document Request No. 8.

Interrogatory No. 8 states as follows:

> Please identify every doctor, physician, health or medical practitioner, hospital, clinic, institution, physical therapist, speech therapist, occupational therapist, psychologist, psychiatrist, counselor, social worker, or other health care provider that you have consulted, been examined by, or been treated by during the period of January 1, 2005, through the date of signing your responses to these interrogatories. For each, state the date(s) of the examination(s), the reason for such examination(s) and/or treatment, and identify all related documents.

(Doc. No. 35-1 at 7.)

Document Request No. 7 states as follows:

> All documents or other tangible things referencing or reflecting any consultations, visits, appointments, communications or correspondence with any doctor, physician, health or medical practitioner, hospital, clinic, institution, physical therapist, speech therapist, occupational therapist, psychologist, psychiatrist, counselor, social worker, or other healthcare provider from January 1, 2005, to the present, including but not limited to medical history, medical records, doctors' notes, and medical billing statements for care, treatment, hospitalization, and/or prescription medication.

(Doc No. 35-2 at 5.) Document Request No. 8 requests "[a]n executed copy of the attached Medical Records Authorization." *Id.*

In response to these requests, Plaintiff provided an executed release of medical records limited to the period from May 14, 2013, to the present, which is the period when she received hip surgery at Depaul Health Center and stayed at Defendants' facility.

On April 25, 2016, counsel for the parties conferred in good faith regarding Defendants' request for Plaintiff's medical information and records. Defendants conveyed their belief that the medical records were discoverable to examine whether Plaintiff had requested or received accommodations when receiving medical care in the past, to address what her emotional state was prior to her stay at Defendants' facility, and

to identify whether her emotional distress was caused by something other than Defendants' alleged failure to accommodate her disability.  Defendants also argue that they are entitled to review Plaintiff's medical records prior to her stay at Defendants' facility to evaluate whether she does in fact need healthcare services on a regular basis, which is the alleged basis for her request for injunctive relief.  In addition, Defendants offered to enter into a stipulated protective order to protect the confidentiality of the medical records.

Plaintiff indicated that no additional medical information would be made available unless Defendants would stipulate that no medical records would be used for any purpose other than to address whether an accommodation was previously requested or provided.  Defendants did not agree to that stipulation, and Plaintiff has not supplemented her responses to Defendants' requests.  On April 28, 2016, Defendants filed this motion to compel Plaintiff to fully and completely respond to Interrogatory No. 8 and Document Requests No. 7 and 8.  Defendants also seek costs and attorneys' fees in preparing and pursuing their motion to compel.

In response, Plaintiff argues that the scope of discovery Defendants seek on the topic of how Plaintiff communicates in a medical setting is disproportional to the needs of the case.  In response to Interrogatory No. 8, Plaintiff objects on the grounds that the request is overbroad, oppressive or unduly burdensome; seeks information not material, necessary, or relevant to the prosecution or defense of this action; is confidential or personal in nature; and is not reasonably calculated to lead to the discovery of admissible

evidence. In response to Document Requests No. 7 and 8, subject to and without waiving the objections, Plaintiff states that she has already provided the name of the healthcare provider who performed her hip surgery before she was transferred to Defendants' facility. She has also provided a signed Health Insurance Portability and Accountability Act (HIPAA) release for her records from this provider, limited to the period of her surgery and recovery.

Plaintiff argues that, while how Plaintiff communicated in a medical setting in the past may be relevant to Plaintiff's ability to communicate during her treatment at Defendants' facility, seeking over eleven years' worth of medical records from every provider concerning any sort of medical treatment is not proportional to the needs of this case as it falls outside the relevant time period and also seeks discovery of irrelevant, highly confidential, and personal matters. Plaintiff argues that she has not put her entire medical history in controversy by bringing a discrimination claim, and the burden imposed on Plaintiff to recollect and reveal over eleven years' worth of medical care, including dates, reasons for treatment, and the names of the providers outweighs the benefit in resolving this case.

Plaintiff proposes that the requested information should be limited to a more reasonable period, for example, a two-year period, and the released information should be used solely to address whether Plaintiff had requested accommodations in the past and whether they were provided.

Plaintiff argues that her medical records are not relevant and will not become

relevant to her emotional distress claims because she seeks only emotional distress damages of the type inherent to the experience of discrimination and alleges no damages that the medical records would tend to prove or disprove. Therefore, Plaintiff argues that her emotional state prior to the alleged discrimination is of no importance in resolving the claims against Defendants.

Plaintiff further argues that over eleven years' medical records are irrelevant to and disproportionate to Defendants' needs in defending against Plaintiff's claim for injunctive relief. Plaintiff contends that the medical records she is willing to provide, for the period of her hospital stay directly before her treatment at Defendants' facility, as well as Defendants' own records, should suffice to establish that Plaintiff is an elderly woman who requires regular healthcare.

Finally, Plaintiff argues that an award for Defendants' costs and attorneys' fees in preparing and pursuing their motion to compel is unwarranted because Plaintiff has been responsive in the discovery process and Plaintiff's nondisclosure is substantially justified as a genuine dispute exists over the relevance and proportionality of the information and documents Defendants seek.

In reply, Defendants argue that a request for medical records from January 1, 2005 to the present is reasonable and necessary to permit an effective review of Plaintiff's previous experiences in medical settings. Defendants argue that the requested medical records are relevant to Plaintiff's claim for emotional distress damages because the emotional distress damages are the focus of her claim, and that the records are relevant to

Plaintiff's claim for injunctive relief in order to evaluate whether Plaintiff suffers from any conditions or illnesses that are likely to recur, and whether any of those illnesses are likely to require the sort of rehabilitative care that would make Plaintiff likely to return to Defendants' facility.

Finally, Defendants argue that their requests put virtually no burden or expense on Plaintiff because all Defendants request is that Plaintiff identify her healthcare providers and provide authorizations for Defendants to seek medical records from those providers.

## **DISCUSSION**

Under Federal Rule of Civil Procedure 26(b)(1), litigants may obtain

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Jo Ann Howard & Assocs., P.C. v. Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted).

Defendants, as the moving party, bear the initial burden of showing that the requested discovery is discoverable within the meaning of Rule 26. *See Cent. States,*

*Se. & Sw. Areas Pension Fund v. King Dodge, Inc.*, No. 4:11MC00233 AGF, 2011 WL 2784118, at *2 (E.D. Mo. July 15, 2011). "[A]fter the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper." *Cincinnati Ins. Co. v. Fine Home Managers, Inc.*, No. 4:09CV234-DJS, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010).

The Court believes that Plaintiff's past medical records are relevant to determine whether she has received accommodations and what kind of accommodations she has received, if any, in medical settings. Indeed, Plaintiff acknowledges the relevance of the medical records for this purpose, but she argues that the scope of the request should be narrowed to a more limited time period. As discussed below, the Court will limit the scope of the request, but not to the extent suggested by Plaintiff. Nor will the Court, at this time, limit the purpose for which the records may be used by Defendants in this case.

In addition to determining the extent of Plaintiff's past accommodations, the Court believes that some portion of the records sought by Defendants may become relevant to Plaintiff's request for emotional distress damages; specifically, the records may be relevant in establishing that something other than Defendants' alleged discriminatory conduct caused Plaintiff's emotional distress. *See Eggering v. MHP, Inc.*, No. 4:10CV01794 AGF, 2011 WL 6029956, at *2 (E.D. Mo. Dec. 5, 2011)

(holding that records of treatment plaintiff may have received for emotional distress prior to defendant's discriminatory conduct were relevant and discoverable); *E.E.O.C. v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 400 (E.D. Cal. 2009) ("Defendant should be able to determine whether Plaintiff's emotional state may have been effected by something other than Defendant's alleged actions."); *Doverspike v. Chang O'Hara's Bistro, Inc.*, No. 03-5601 ADM/AJB, 2004 WL 5852443, at *3 (D. Minn. July 13, 2004) ("Defendants have a right to determine whether [plaintiffs] have relevant medical history that indicates their emotional distress was caused in part by events and circumstances independent of defendants' conduct."). The Court recognizes that the medical records' relevance depends on the evidence Plaintiff presents at trial to support her claim for emotional distress damages; therefore, the Court reserves judgment as to whether Defendants will be permitted to use any such records as evidence at trial. *See Eggering*, 2011 WL 6029956, at *2.

The Court further believes that Plaintiff's medical history may be relevant in her pursuit of injunctive relief, and that Defendants are entitled to some portion of Plaintiff's medical records to evaluate whether Plaintiff suffers from any conditions or illnesses that are likely to recur and cause her to return to Defendants' facility. In fact, Plaintiff concedes that her medical records are relevant in supporting her claim for injunctive relief, but only disputes to what extent back in time her medical records should be revealed.

The Court agrees with Plaintiff that requiring Plaintiff to reveal eleven years' medical records is not necessary for Defendants to adequately make their defense. Therefore, the Court will limit the discovery of Plaintiff's medical information and records to five years preceding the alleged discriminatory conduct at issue. *See, e.g.*, *Auer v. City of Minot*, No. 4:15-CV-00040-DLH-CSM, 2016 WL 1430023, at *9 (D.N.D. Apr. 11, 2016) (limiting the discovery of plaintiff's mental health records to four years prior to the alleged discriminatory conduct); *Lewis v. Temp-Air, Inc.*, No. 4:14-CV-398 CDP, 2014 WL 5432122, *2 (E.D. Mo. Oct. 27, 2014) (limiting the discovery of mental health records to three years prior to plaintiff's termination by defendant); *Bujnicki v. Am. Paving & Excavating, Inc.*, No. 99-cv-0646S(SR), 2004 WL 1071736, at *19 (W.D.N.Y. Feb. 25, 2004) (permitting discovery of mental and other health records, but only to two years prior to the commencement of plaintiff's employment with defendants); *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, at *3 (D. Kan. Jan. 31, 2002) (limiting defendant's request for medical and psychological records to three years prior to the alleged discriminatory conduct); *McKenna v. Cruz*, No. 98 CIV. 1853 (HBHBP), 1998 WL 809533, at *3 (S.D.N.Y. Nov. 19, 1998) (limiting discovery of plaintiff's mental health records to five years prior to the alleged use of excessive force).

The Court believes that requiring such discovery will not put undue burden on Plaintiff when limited to a five-year period. Furthermore, the Court will only require Plaintiff to identify the names of healthcare providers during the five-year period and

provide authorizations of the release of records, as that is the only information Defendants claim to need. Finally, to protect the confidentiality of the medical records, the Court will order that the information be produced subject to the parties entering a stipulated protective order.

In light of the genuineness of the dispute over the relevance and proportionality of the discovery requests and the result the Court has reached, the Court does not believe that an award of costs or attorneys' fees is warranted here.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to compel (Doc. No. 35) is **GRANTED in part** and **DENIED in part** as set forth above. Plaintiff is directed to produce the materials in question as set forth above within **fourteen (14) days** of the date of this Memorandum and Order, subject to a stipulated protective order to be agreed upon by the parties.

**IT IS FURTHER ORDERED** that Defendants' request for costs and attorneys' fees is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of June, 2016