UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BETSY BATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15-CV-00783-AGF |
| ) | |
| DELMAR GARDENS NORTH, INC. and ) | |
| DELMAR GARDENS NORTH ) | |
| OPERATING LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the renewed motion (ECF No. 139) of Plaintiff Betsy Bates for judgment as a matter of law ("JMOL"), or in the alternative, for a new trial (ECF No. 140). For the reasons set forth below, the motion will be denied.

## BACKGROUND

Plaintiff filed this lawsuit alleging that Defendants failed to provide necessary and reasonable accommodations in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182; Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.065; and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619.[1] Plaintiff claimed that Defendants discriminated against her on the basis of her disability (deafness) by failing to provide her with the auxiliary aids and services necessary to effectively communicate

---

[1] In response to Defendants' Motion for Summary Judgment (ECF No. 57), Plaintiff withdrew her FHA claim. ECF No. 69 at 2.

1

with the staff at Delmar Gardens North ("DG North").  Plaintiff alleged that she was unable to effectively communicate with DG North staff without an American Sign Language ("ASL") interpreter due to her limited proficiency in written and spoken English.

The jury trial began on November 27, 2017, and concluded on December 1, 2017. Both parties agreed that on May 18, 2013, Plaintiff was transferred to DG North, where she stayed for 13 days, to continue rehabilitative and physical therapy following her hip surgery at a different hospital.  Defendants denied any violations of federal or state law, claiming that Plaintiff was able to effectively communicate without an ASL interpreter.

The Court appointed three certified ASL interpreters to serve throughout the trial. Two interpreters provided interpretation for Plaintiff of everything said in the courtroom; they also interpreted questions and answers for Plaintiff, the Court, and the jury while Plaintiff was testifying ("Courtroom Interpreters").  The third interpreter sat at Plaintiff's counsel's table and provided interpretation for communications between Plaintiff and her lawyers ("Table Interpreter").

The Court held extensive discussions with counsel for both parties, Plaintiff, and the three ASL interpreters, both before and throughout the trial, regarding how the interpreters could best serve Plaintiff.  This included discussions as to the positioning of the interpreters, Plaintiff's line of sight for purposes of interpretation, and the order and pace of interpretation.  The Court consistently advised the parties and the interpreters to bring issues regarding the interpretation to the Court's attention so that the Court could address the issues promptly.  Neither Plaintiff nor anyone else raised any issue regarding

whether the Courtroom Interpreters were using proper ASL, and there was no indication that Plaintiff expressed any concern with the Courtroom Interpreters to her counsel, her Table Interpreter, or the Court.

At trial, Plaintiff presented evidence with respect to her claims that Defendants failed to provide her with an ASL interpreter despite repeated requests for one. Plaintiff also presented the following evidence regarding her ability to communicate with DG North Staff without an ASL interpreter. Plaintiff testified that she asked for an explanation via written notes regarding whether she was receiving the correct medication, but she never received a response to her inquiries about her medication and consequently remained confused and concerned throughout her stay. Kathleen Gray, an employee of DG North, testified that DG North staff ordinarily let residents know when meals are served. However, Plaintiff testified that she only discovered when meals were served when she noticed other residents lining up and gestured to a nurse, whereupon she received confirmation of meal times. Plaintiff further testified that she was not aware that Defendants would be providing her with rehabilitation services at her home until DG North employees showed up at her home. In her testimony, Plaintiff indicated that she did not understand many of the words used in DG North Staff's written notes to her, such as the word "usually." Finally, Plaintiff presented a linguistics expert, Judy Shepard-Kegl, who opined in detail as to Plaintiff's difficulties with communicating in written and spoken English, as compared to ASL.

In their case in chief, Defendants presented evidence that Plaintiff was able to communicate with DG North staff using handwritten notes and gestures. For example,

contrary to Plaintiff's testimony, Defendants presented evidence that Plaintiff used the word "usually" in her own notes. Defendants also presented evidence that Plaintiff was able to request a new room, a walker, ice for her hip, a new mattress, and closed captioning on her TV by using written English. The handwritten notes in evidence showed that Plaintiff wrote to DG North nurses: "I understand what you mean," and "I must have an interpreter—no matter whether I can communicate or not." There was also evidence that DG North nurses answered affirmatively by speaking and gesturing when Plaintiff asked whether certain pills were correct. Finally, Defendants presented evidence that Plaintiff participated in her physical therapy and made a complete and timely recovery.

In closing arguments, defense counsel stated that Plaintiff's counsel was attempting to "contort the evidence and mislead [the jury]." ECF No. 140 at 9. Defense counsel also stated, with respect to Plaintiff's expert witness, "[W]e don't need someone from Maine to come in and tell us what we already know, if we're communicating with someone." *Id.* at 9-10. Lastly, defense counsel stated, "[I]t's not okay to sue someone after you receive excellent care." *Id.* at 10. Plaintiff's counsel did not object to these statements during closing arguments.

At the close of Defendants' evidence, Defendants moved for a directed verdict, and Plaintiff orally moved for a judgment as a matter of law ("JMOL"). The Court denied both motions, finding that there was a question of fact for the jury as to whether Plaintiff was able to effectively communicate with DG North staff, and whether Defendants were liable for damages.

The jury was instructed that the primary issue was whether Defendants "discriminated" against Plaintiff, with discrimination in this context defined as failing to provide the auxiliary aids and services necessary to effectively communicate with the DG North staff. The jury was instructed that they could consider the following factors in determining the issue: (1) the method of communication used by Plaintiff; (2) the ability or inability of Plaintiff to communicate in other ways; (3) the nature, length, and complexity of the communication involved; and (4) the context in which the communication took place. ECF No. 134 at 8-9.

The jury returned a verdict on December 1, 2017, finding in favor of both Defendants. ECF No. 130. Plaintiff filed this renewed motion for JMOL and, in the alternative, a new trial, on January 12, 2018. Plaintiff argues that she is entitled to JMOL because no reasonable jury could have found for Defendants on the issue of whether Defendants provided Plaintiff with the auxiliary aids and services necessary for Plaintiff to effectively communicate.

In the alternative, Plaintiff requests a new trial because: (1) the jury's verdict was against the great weight of the evidence; (2) one of the Courtroom Interpreters, Jim Self, exclusively used Pidgin Sign English ("PSE"), a form of sign language that combines ASL with features of English, which Plaintiff was unfamiliar with, resulting in a miscarriage of justice; and (3) Defendants' counsel's improper statements during closing arguments resulted in a miscarriage of justice. As to the second argument, Plaintiff presents affidavits by Leah Wiederhorn, Plaintiff's attorney, and Shelly Jones, the Table Interpreter, stating that Jim Self used PSE instead of ASL. ECF Nos. 140-3, 140-4.

5

Plaintiff argues that this usage of PSE caused Plaintiff, who was unfamiliar with PSE, to appear "confused or stupid in front of the jury." ECF No. 140 at 8. Jones states in her affidavit that Self would translate Plaintiff's signing that she "did not understand the signs" to simply "I don't understand." ECF. No. 140-4 at 3.

In response, Defendants argue that Plaintiff is not entitled to JMOL because a reasonable jury could have found in favor of Defendants on the issue of whether Defendants provided Plaintiff with the auxiliary aids and services necessary for effective communication. Defendants also argue that a new trial should not be granted because: (1) substantial evidence was presented at trial to support the jury verdict; (2) any alleged interpretation issues should have been, but were not, raised during trial; and, in any event, did not result in a miscarriage of justice; and (3) Defendants' counsel's statements during closing arguments were proper and did not contribute to a miscarriage of justice. Defendants present an affidavit by Self wherein he states that he has successfully interpreted for Plaintiff on other occasions, that Plaintiff referred to him as her "favorite interpreter," and that another deaf individual who attended the first two days of the trial said that he was "very clear." ECF No. 141-6. In his affidavit, Self does not dispute that he exclusively used PSE.

## **DISCUSSION**

Federal Rule of Civil Procedure 50(b) states that, when ruling on a renewed motion for JMOL, "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." JMOL may only be granted when "the evidence at trial is wholly insufficient to support a

jury finding." *In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 571 (8th Cir. 2009). When considering a JMOL, a reviewing court must "draw all reasonable inferences in favor of the nonmoving party," and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbings Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[The court] must disregard all evidence favorable to the moving party that the jury is not required to believe.").

Federal Rule of Civil Procedure 59(a)(1)(A) states that a court may grant a motion for a new trial after a jury trial "for any reason which a new trial has heretofore been granted in an action at law in federal court." "[D]istrict courts enjoy broad discretion in choosing whether to grant a new trial." *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995). A new trial is appropriate if there is a "clear showing that the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." *Weitz Co. v. MH Wash.*, 631 F.3d 510, 520 (8th Cir. 2011) (quoting *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1197 (8th Cir. 2001)). When considering whether the outcome is against the great weight of evidence, "[a] district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980). A motion for a new trial based on improper statements during closing arguments should only be granted if the improper statements are "plainly unwarranted and clearly injurious" and "cause prejudice to the opposing party and unfairly influence a jury's verdict." *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351 (8th Cir. 2002).

**Renewed Motion for JMOL**

Upon review of the record, the Court concludes that the renewed motion for JMOL on the issue of Defendants' liability must be denied. After drawing all reasonable inferences in favor of Defendants, the Court finds that the evidence in the record is sufficient for a reasonable jury to conclude that Defendants did not fail to provide the auxiliary aids and services necessary for effective communication between Plaintiff and the DG North staff, particularly in light of Plaintiff's relatively short stay at DG North and the nature of the communications at issue—factors that the jury was instructed it could consider. For example, the jury reasonably could have concluded that the handwritten notes exchanged between Plaintiff and DG North staff demonstrated that Plaintiff was able to communicate her needs and desires to DG North staff and that the staff understood those needs. DG North staff testified that they responded to Plaintiff's inquiries about medication with gestures and speaking. Defendants also presented evidence that called into question Plaintiff's credibility regarding her inability to understand written English. A jury could have reasonably concluded from the all of the evidence presented at trial that Plaintiff was able to effectively communicate with Defendants without an ASL interpreter given the context of her communications with DG North staff.

The Court rejects Plaintiff's argument that the following evidence requires a finding, as a matter of law, that Defendants failed to provide for effective communication: (1) Plaintiff's testimony that her requests for clarification about medication went ignored; (2) Plaintiff's testimony that she was unaware of meal times

until she inquired herself; and (3) Plaintiff's testimony that she was not aware that Defendants would be providing her with rehabilitation services at her home. Because the Court must draw all inferences in favor of the non-moving party, and a jury is not required to take Plaintiff at her word, this evidence is not sufficient to overturn a jury verdict. *See Reeves*, 530 U.S. at 150. Plaintiff's credibility was properly submitted to the jury, and the Court may not substitute its judgment for that of the jury.

**Motion for a New Trial**

The Court now turns to Plaintiff's arguments for a new trial: (1) that the jury verdict was against the great weight of the evidence so as to constitute a miscarriage of justice; (2) that Self's use of PSE instead of ASL resulted in a miscarriage of justice; and (3) that Defendants' counsel's statements during closing arguments resulted in a miscarriage of justice. The Court does not find any of the arguments compelling and, accordingly, must deny Plaintiff's motion for a new trial.

When considering whether the jury verdict is against the great weight of the evidence presented at trial, although a district court may weigh the evidence and evaluate the credibility of the witnesses, its ability to do so is not boundless. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179, 186 (8th Cir. 1972) ("Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different . . . conclusions or because judges feel that other results are more reasonable."). Although Plaintiff did in fact present compelling evidence, the Court does not find the jury verdict to be against the great weight of the evidence presented at trial. Plaintiff's case rested heavily upon the testimony of Plaintiff and other witnesses. As

9

noted above, Defendants presented evidence contradicting Plaintiff's testimony regarding her lack of comprehension. And Plaintiff's notes suggesting that she did not understand and needed an interpreter were limited to the first few days of her stay. Even if the Court were to assign substantial credibility to the testimony of Plaintiff and her expert, it cannot be said that the jury verdict is contrary to the great weight of the evidence. Reasonable minds could differ as to whether Plaintiff effectively communicated with DG North staff, again particularly in light of the short duration of Plaintiff's stay at DG North and the non-complex nature of the communications. As such, the determination was properly left to the jury. *Id.* at 187.

Plaintiff waived her second argument by failing to raise the issue during trial despite having multiple opportunities to do so. *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989) (citing cases). Even if the issue were not waived, upon examining the substance of Plaintiff's argument, the Court does not find a new trial to be warranted. To support her second argument, Plaintiff cites *United States v. Krboyan*, No. 1:02-CR-5438 OWW, 2005 WL 3309588 (E.D. Cal. Dec. 7, 2005). The facts in *Krboyan*, however, are far removed from the facts in this case. In *Krboyan*, the court appointed one translator for the criminal defendant. The translator spoke a different dialect of Armenian than the defendant, Krboyan. The translator's use of a different dialect caused Krboyan to be unable to effectively communicate with his lawyer, unable to understand the entirety of the criminal proceedings, unable to understand what the witnesses were saying, unable to understand questions asked of him, and unable to have his intended testimony accurately translated. *Id.* at *9. Finally, there was indication that

Krboyan raised the issue with the court before and during the trial. *Id.* at *6. The district court granted a new trial based on "the totality of these issues." *Id.* at *9.

In Plaintiff's case, the Court appointed three separate interpreters. There was no indication that Self failed to accurately translate Plaintiff's testimony in any significant way. Plaintiff does not contend that she had any trouble communicating with her lawyer or understanding the proceedings. And although Plaintiff points to the affidavits of Jones and Plaintiff's counsel speculating that Self's interpretation confused Plaintiff, Plaintiff has not submitted her own affidavit attesting to her confusion, and in any event, Plaintiff has not shown that any lapse in translation affected the substance of her testimony. Therefore, a new trial will not be granted. *United States v. Hernandez*, 994 F. Supp. 627, 630-31 (E.D. Pa. 1998) (citing cases).

Finally, as to defense counsel's statements during closing arguments, although Plaintiff's failure to object is not fatal,[2] in order to succeed on her final argument, Plaintiff must first show that defense counsel's statements at closing argument were "plainly unwarranted and clearly injurious" and "cause[d] prejudice to the opposing party and unfairly influence[d] a jury's verdict." *Harrison*, 312 F.2d at 351. Additionally, Plaintiff must demonstrate that the "interest of substantial justice is at stake." *McWhorter*, 906 F.2d at 677. Although defense counsel's statements with respect to the expert and Plaintiff having received excellent care may have been improper, the Court does not find that defense counsel's statements during closing argument prejudiced

---

[2] *McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990) ("[W]here the interest of substantial justice is at stake, improper argument may be the basis for a new trial even if no objection has been raised.") (citing cases).

Plaintiff or unfairly influenced the jury. Nor is the interest of substantial justice at stake. AS such, the Court does not find the grant of a new trial to be warranted on this ground. *See Alholm v. American Steamship Co.*, 144 F.3d 1172, 1181 (8th Cir. 1998) (holding that closing arguments wherein defendants were referred to as a "gang of bullies" and its counsel as a "spin doctor" were not so prejudicial as to warrant a new trial). In this case, the jury was specifically instructed to not consider closing arguments as evidence. The jury's findings were supported by evidence, and the judgment was a reasonable application of governing law.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff's renewed motions for judgment as a matter of law, or in the alternative, for a new trial, are both **DENIED**. ECF Nos. 139 & 140.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2018.